**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF MICHIGAN, | |
| Plaintiff, | Case No. 2:25-cv-11215-JJCG-KGA |
| -v- | Hon. Jonathan J.C. Grey |
| EXPRESS SCRIPTS, INC., et al., | |
| Defendants. | |

**MOTION TO INTERVENE AND UNSEAL BY THE**
**NATIONAL COMMUNITY PHARMACISTS ASSOCIATION**

The National Community Pharmacists Association ("NCPA") respectfully moves this Court, pursuant to Rule 24(b)(1) of the Federal Rules of Civil Procedure, to intervene in the above-captioned matter for the limited purpose of seeking public access to certain pleadings and exhibits filed under seal. NCPA is specifically seeking access to the "Pharmacy Benefits Management Services Subcontract Agreement" (the "Prime-ESI Agreement") that is attached to and referenced in multiple pleadings, namely Docket Entries 27, 36, 44, 57, 65, and 73 (the sealed pleadings referencing the Prime-ESI Agreement) and Docket Entries 26-1, 28-1, 55-1, 56, 58-1, 63, and 79 (the sealed exhibits containing the Prime-ESI Agreement).

NCPA sought concurrence from the parties prior to filing this Motion. Plaintiff does

not take a position on NCPA's motion. Defendants oppose the relief sought herein.

Dated: June 23, 2026                    Respectfully submitted,

                                        s/ Katherine Van Dyck
                                        Katherine Van Dyck
                                        **KVD STRATEGIES PLLC**
                                        1717 N Street NW, Suite 1
                                        Washington, DC 20036
                                        (202) 798-1948
                                        katie@kvdstrategies.com

                                        Kathryn Regan Eisenstein (P66371)
                                        **MANTESE HONIGMAN, P.C.**
                                        1361 E. Big Beaver Rd.
                                        Troy, MI 48083
                                        (248) 457-9200
                                        keisenstein@manteselaw.com

                                        *Attorneys for Proposed Intervenor*
                                        *National Community Pharmacists*
                                        *Association*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF MICHIGAN,<br><br>      Plaintiff,<br><br>-v-<br><br>EXPRESS SCRIPTS, INC., et al.,<br><br>      Defendants. | Case No. 2:25-cv-11215-JJCG-KGA<br><br>Hon. Jonathan J.C. Grey |

**BRIEF IN SUPPORT OF MOTION TO INTERVENE AND**
**UNSEAL BY THE NATIONAL COMMUNITY PHARMACISTS**
**ASSOCIATION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

CONCISE STATEMENT OF THE ISSUES PRESENTED ................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................... v

I.      INTRODUCTION .................................................................................. 1

II.     PROCEDURAL HISTORY ................................................................... 4

III.    PERMISSIVE INTERVENTION ......................................................... 7

        A.      Timeliness ................................................................................ 7

        B.      Commonality............................................................................. 7

        C.      Prejudice................................................................................... 8

IV.     PUBLIC ACCESS TO JUDICIAL RECORDS ..................................... 9

        A.      The Sealed Pleadings and Exhibits Are Judicial Records.................... 9

        B.      Defendants Bear the Onus of Justifying Redactions......................... 10

V.      CONCLUSION ................................................................................... 14

CERTIFICATE OF SERVICE ............................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544 (7th Cir. 2002) ...................... 13

*Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165 (6th Cir. 1983) ...................................................................................... 9

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) ........................................... 14

*Dwyer v. Southwest Airlines Co.*, No. 3:16-cv-03262, 2022 WL 1164227 (M.D. Tenn. Apr. 19, 2022) ................................................................... 7

*E.E.O.C. v. Nat'l Children's Ctr.*, 146 F.3d 1042 (D.C. Cir. 1998)................ 7, 8

*Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404 (1st Cir. 1987)................................................................................................ 14

*Grae v. Corrections Corp. of Am.*, 134 F.4th 927 (6th Cir. 2025) ................ 9, 10

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308 (D. Conn. 2009)...................................................................... 8

*Johnson v. Corrections Corp. of Am.*, No. 3:12-cv-00246-H, 2014 WL 3970115 (W.D. Ky. Aug. 13, 2014) ........................................................... 7

*Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159 (6th Cir. 1987)................................................................................................ 7

*Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775 (1st Cir. 1988) .................. 8

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) .......................... 9

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299 (6th Cir. 2016)................................................................................ 9, 10, 12, 13

*United States ex rel. Mahmood v. Elizabethtown Hematology Oncology, PLC*, No. 3:11-cv-00376-GNS, 2015 WL 6870140 (W.D. Ky. Nov. 6, 2015)....... 8

*United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161 (4th Cir. 2024)....... 10

ii

*United States v. W.A. Foote Mem'l Hosp.*, No. 15-cv-12311, 2017 WL 4477968
(E.D. Mich. Jan. 4, 2017) .............................................................................. 13

*Woods v. United States Drug Enf't Admin.*, 895 F.3d 891 (6th Cir. 2018) ....... 14

**Rules**

Fed. R. Civ. P. 24..................................................................................... 7, 8

L.R. 5.3 ................................................................................................. 11, 12

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1. Whether the Court should permit NCPA to intervene in the above-captioned matter for the limited purpose of moving to unseal certain pleadings.

    NCPA's Answer: YES.

2. Whether Docket Entries 27, 36, 44, 57, 65, and 73 (the sealed "Pleadings" referencing a written agreement between Defendants Express Scripts, Inc. and Prime Therapeutics LLC) are judicial records to which the public has a right of access under common law and the First Amendment.

    NCPA's Answer: YES.

3. Whether Docket Entries 26-1, 28-1, 55-1, 56, 58-1, 63, and 79 (the sealed "Exhibits" containing a written agreement between Defendants Express Scripts, Inc. and Prime Therapeutics LLC) are judicial records to which the public has a right of access under common law and the First Amendment.

    NCPA's Answer: YES.

4. Whether Defendants Express Scripts, Inc. and Prime Therapeutics LLC have demonstrated a compelling reason for maintaining the Pleadings and Exhibits under seal that overcomes the public right of access to those judicial records.

    NCPA's Answer: NO.

5. Whether the Court should unseal the Pleadings and Exhibits.

    NCPA's Answer: YES.

iv

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

**Cases:**

1. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)

2. *Grae v. Corrections Corp. of Am.*, 134 F.4th 927, 930 (6th Cir. 2025).

3. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299 (6th Cir. 2016)

4. *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159 (6th Cir. 1987)

5. *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165 (6th Cir. 1983)

**Rules:**

6. Fed. R. Civ. P. 24

7. L.R. 5.3

v

National Community Pharmacists Association ("NCPA") asks this Court to intervene for the limited purpose of seeking public access to a written contract between Defendants Express Scripts, Inc. ("Express Scripts" or "ESI") and Prime Therapeutics LLC ("Prime") (collectively "Defendants")—titled "Pharmacy Benefits Management Services Subcontract Agreement" (the "Prime-ESI Agreement")—that is attached to and referenced in multiple pleadings filed in the above-captioned matter. NCPA, its members, and the general public have direct and substantial interests in this litigation and the Prime-ESI Agreement put at issue by Defendants. Their right of access to these judicial records outweighs any interests that Defendants might have in keeping the document and its contents away from public view. For these and the foregoing reasons, NCPA respectfully requests that this Court grant its motion to intervene and unseal Docket Entries 27, 36, 44, 57, 65, and 73 (the "Sealed Pleadings") and Docket Entries 26-1, 28-1, 55-1, 56, 58-1, 63, and 79 (the "Sealed Exhibits").

## I.     INTRODUCTION

NCPA is a nonprofit organization based in Alexandria, Virginia. NCPA's mission is to protect and promote the interests of independent pharmacists whose current and future success is vital to their patients, their communities, and the entire healthcare system. (Dec. of B. Douglas Hoey in Support of Mtn. ("Hoey Dec.") ¶2.) It represents some 18,900 pharmacies across the United States who employ more

than 235,000 individuals on a full- or part-time basis, including 226 pharmacies and approximately 2,000 employees in the State of Michigan. (*Id*.) These pharmacies, and their pharmacists, are rooted in the communities they serve and pride themselves on connecting and consulting with patients and providing high levels of care. (*Id*. ¶3.)

NCPA and its members have a direct and substantial interest in these proceedings. (*Id*. ¶¶4–5.) Protecting independent community pharmacies from anticompetitive and exclusionary conduct by pharmacy benefit managers ("PBMs") like Defendants lies at the core of its organizational mission, and it has long advocated on behalf of its members against PBM practices that suppress reimbursement, extract opaque fees, steer patients, and otherwise threaten the viability of independent pharmacies and patient access to care. (*Id*. ¶4.) NCPA regularly engages in litigation, legislative advocacy, regulatory proceedings, and public education concerning PBM conduct and its effects on community pharmacies. (*Id*.) It is actively involved in litigation against Express Scripts alleging horizontal agreements to artificially suppress reimbursement rates.[1] *Nat'l Comm'ty*

---

[1] NCPA's lawsuit was transferred to the District of Rhode Island in April 2025 and consolidated with multi-district litigation pending there. *NCPA Litigation*, Conditional Transfer Order (Dkt. 53) (C.D. Cal. Apr. 22, 2025); *see generally In re GoodRx and Pharmacy Benefit Manager Antitrust Litig. (No. II)*, No. 1:25-md-03148 (D.R.I.).

*Pharmacists Ass'n v. GoodRx, Inc.* ("*NCPA Litigation*"), No. 2:25-cv-585, Class Action Compl. (Dkt. 1) (C.D. Cal. Jan. 22, 2025). In that case, NCPA alleges that Express Scripts and several other PBMs "agree[d] to outsource their pharmacy reimbursement rate decisions on generic drugs to a mutual third party, GoodRx, which sets the rates of reimbursement for them with full knowledge of competitively sensitive information ('CSI') across ostensibly rivalrous PBMs." *Id*. ¶2 (2:25-cv-585 PageID.2).

The allegations in the instant case—which involve a similar agreement between Defendants to suppress pharmacy reimbursement terms—bear directly on issues central to NCPA's longstanding advocacy on behalf of its members. The People of the State of Michigan ("the State") allege in their Amended Complaint that Express Scripts and Prime "entered into an unlawful agreement" whereby "Prime must pay pharmacies the same (lower) network rates and extract the same (higher) fees negotiated by ESI, supplanting the terms Prime had negotiated with those pharmacies." (Dkt. 41 ¶13, PageID.1322.) Defendants argue that the Prime-ESI Agreement is directly related to these allegations. By attaching the document to their motions to dismiss and relying on it in support of their arguments, they voluntarily made the document a judicial record and placed it at issue in this litigation. NCPA, its members, and the Michigan communities they serve therefore have significant interests in accessing it.

Public access to the Prime-ESI Agreement, and the pleadings referencing it, is necessary for NCPA to effectively evaluate, advocate, and educate its members on these issues and their economic interests and competitive position. (Hoey Dec. ¶¶2–5.) It is necessary for NCPA's members, and the communities they serve, to understand how PBMs' inner dealings affect the price of and access to prescription drugs in the State of Michigan. And it is necessary for the general public to follow the work of a public agency litigating on their behalf.

Without access to the Prime-ESI Agreement, NCPA, its members, and the general public are deprived of information necessary to understand this litigation and the operation, scope, and practical effects of PBM contracting practices that may shape reimbursement levels, pharmacy network participation, access to patients, and access to care. Unsealing is therefore not sought out of generalized curiosity. NCPA requests this relief so the general public can understand their rights and so NCPA, whose mission is to protect independent pharmacies from PBM-related harms, can assess and respond to conduct that may substantially affect its members' businesses and the communities they serve.

## II.   PROCEDURAL HISTORY

The State alleges that Defendants entered into an illegal agreement setting reimbursements for pharmacies in the State of Michigan. On July 25, 2025, Defendants filed a redacted motion to dismiss ("First MTD"). (Dkt. 28.) They

attached the Prime-ESI Agreement as Exhibit 1. (Dkt. 26-1.) On the same day, Defendants asked this Court to place the unredacted First MTD and Prime-ESI Agreement under seal. (Dkt. 26.) Defendants vaguely argued that the Prime-ESI Agreement "contains a large volume of confidential and sensitive business information." (*Id*. at 2, PageID.231.)

The State took no position on Defendants' motion to seal. (Dkt. 32.) It also asked this Court to seal its unredacted opposition to Defendants' First MTD. (Dkt. 35.) The Court provisionally granted the *State's* motion to seal on September 18, 2025. (Dkt. 38.) It ordered Defendants to file a motion by October 2, 2025 if they wished to maintain the State's opposition under seal. (Dkt. 38.) No such motion was filed by the court-ordered deadline, but the State's opposition remained under seal nonetheless. On October 16, 2025, Defendants filed a redacted reply in support of their First MTD along with an unredacted version under seal. (Dkts. 43, 44.) Defendants did not file a motion seeking leave to submit sealed and redacted pleadings with those records.

On October 1, 2025, the State filed its Amended Complaint. (Dkt. 41.) The State and Defendants filed a stipulation on the same day related to that filing and the First MTD. (Dkt. 40.) On March 10, 2026, the Court entered an order addressing that stipulation and, important to the instant motion, denying without prejudice Defendants' original motion to seal the Prime-ESI Agreement and unredacted First

Page 5 of 16

MTD. (Dkt. 52 at 3, PageID.1718.) However, those pleadings were never placed on the public docket.

On March 23, 2026, Defendants filed a redacted motion to dismiss the Amended Complaint (the "Second MTD"), with the Prime-ESI Agreement again attached as Exhibit 1. (Dkt. 58.) They again asked this Court to seal the unredacted Second MTD and Prime-ESI Agreement (Dkts. 55–57), without opposition from the State. Defendants further asked the Court to maintain the previously filed pleadings—including their First MTD and reply in support—under seal. The Court granted that motion on April 1, 2026. (Dkt. 60.) The Court also granted a motion by Defendants to seal the State's opposition to the Second MTD and Defendants' subsequent reply brief. (Dkts. 64–65, 72–73, 75, 80.)

The end result is that the Prime-ESI Agreement, attached as an exhibit to various pleadings, is under seal and out of public view. Unredacted pleadings referencing the Prime-ESI Agreement also remain under seal, in violation of the general public's right to access judicial documents. These include Docket Entries 27, 36, 44, 57, 65, and 73 (the "Pleadings" referencing the Prime-ESI Agreement) and Docket Entries 26-1, 28-1, 55-1, 56, 58-1, 63, and 79 (the "Exhibits" containing the Prime-ESI Agreement) (together, the "Sealed Pleadings and Exhibits").

## III.   PERMISSIVE INTERVENTION

Rule 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Courts must determine whether "(1) the motion is timely, (2) the proposed intervenor 'has a claim or defense that shares with the main action a common question of law or fact, and (3) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights." *Johnson v. Corrections Corp. of Am.*, No. 3:12-cv-00246-H, 2014 WL 3970115, at *1 (W.D. Ky. Aug. 13, 2014) (cleaned up).

### A.   Timeliness

This matter is in its earliest stages. This Court's last order related to the Sealed Pleadings and Exhibits was entered less than two months ago on April 29, 2026. (Dkt. 80.) This is sufficient for the "timely" prong of Rule 24. *See id*. (permitting intervention less than 10 weeks after entry of a sealing order).

### B.   Commonality

Permissive intervention under Rule 24 is the accepted procedural tool for non-parties challenging confidentiality orders. *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 162–64 (6th Cir. 1987); *Dwyer v. Southwest Airlines Co.*, No. 3:16-cv-03262, 2022 WL 1164227, at *4 (M.D. Tenn. Apr. 19, 2022); *see also E.E.O.C. v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (collecting

circuit court cases adopting this procedure). Courts are generous on this issue given "the need for 'an effective mechanism for third-party claims of access to information generated through judicial proceedings.'" *E.E.O.C.*, 146 F.3d at 1045 (quoting *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988)). And in the instant case, there is also "no question" that NCPA has claims that share a common question with this suit. *United States ex rel. Mahmood v. Elizabethtown Hematology Oncology, PLC*, No. 3:11-cv-00376-GNS, 2015 WL 6870140, at *2 (W.D. Ky. Nov. 6, 2015). The separate NCPA litigation and the MDL with which it is consolidated raise similar issues about the legality of agreements between PBMs fixing reimbursement rates for pharmacies. These facts together are sufficient for the second prong of the Court's Rule 24 analysis.

## C. Prejudice

When considering a motion to intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). NCPA is not attempting to participate in this case on the merits, so intervention "will not delay the progress of these proceedings." *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 315 (D. Conn. 2009). Thus, no prejudice will result. *Johnson*, 2014 WL 3970115, at *1; *In re EPDM Antitrust Litig.*, 255 F.R.D. at 315.

## IV.   PUBLIC ACCESS TO JUDICIAL RECORDS

"The federal courts do their business in public—which means the public is presumptively entitled to review every document that a party files with the court for purposes of influencing a judicial decision." *Grae v. Corrections Corp. of Am.*, 134 F.4th 927, 930 (6th Cir. 2025); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."). It is a right steeped in common law traditions and the First Amendment, *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983), and it extends from criminal cases to civil ones, with "a strong presumption in favor of openness." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quotations omitted). "Thus, under rules long settled in this circuit, '[o]nly the most compelling reasons can justify non-disclosure of judicial records.'" *Grae*, 134 F.4th at 930 (quoting *Shane Group*, 825 F.3d at 305).

### A.   The Sealed Pleadings and Exhibits Are Judicial Records

Whether the Sealed Pleadings and Exhibits are judicial records is easily answered. "[A] document counts as a judicial record, for purposes of the presumption of access, when it is 'filed with the objective of obtaining judicial action or relief' or otherwise plays 'a role in the adjudicative process.'" *Id*. at 933 (quoting

*United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171 (4th Cir. 2024)). This is true for the entire document, "not just the parts cited by the parties or the court." *Id*. (citation omitted). Here, Defendants submitted the Prime-ESI Agreement in support of their First MTD and Second MTD, saying "[n]o part of the complex, heavily negotiated [document] … expressly or impliedly evidences an agreement to fix reimbursement rates for pharmacies." (Dkt. 28 at 30, PageID.797; Dkt. 58 at 31, PageID.2419.) They have placed the full content of the Prime-ESI Agreement at issue, and the public has a presumptive right to access it.

### B.    Defendants Bear the Onus of Justifying Redactions

The burden to overcome the "strong presumption in favor of openness" is heavy. *Shane Grp.*, 825 F.3d at 305. "Only the most compelling reasons" will suffice, and "the greater the public interest in the litigation's subject matter, the greater the showing necessary." *Id*. Even if the sealing parties meet their burden, "the seal itself must be narrowly tailored to serve that reason." *Id*. This means they must "'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Id*. at 305–06 (citation omitted). The district court too "must set forth specific findings and conclusions 'which justify nondisclosure to the public.'" *Id*. at 306 (citation omitted).

Defendants' motions to seal the Prime-ESI Agreement, a 390-page document, are short and perfunctory. The bulk of their briefing is devoted to the legal standard

for sealing judicial records, while just a few paragraphs in the various motions to seal make broad and unsupported claims that the Prime-ESI Agreement contains "confidential and non-public terms" and unspecified "information that affects a number of non-party privacy interests." (Dkt. 26 at 3–4, PageID.235–236; Dkt. 55 at 8, PageID.1732.) Defendants give no indication of which terms in the Prime-ESI Agreement are confidential or why. Nor do they identify any specific third parties whose privacy interests are implicated or what legal doctrine applies to those interests. Meanwhile, the State's motion to seal its original opposition points only to the parties' agreed protective order. (Dkt. 35 at 1–2, PageID.1112–1113.)

This Court's order granting those motions is similarly short on analysis of the Prime-ESI Agreement's content and how its disclosure might harm Defendants or third parties. And on three separate occasions—when Defendants missed the deadline to request permanent sealing of the State's opposition (Dkt. 38); when Defendants placed their reply under seal without leave of court (Dkts. 43, 44); and when this Court denied Defendants' first motion to seal (Dkt. 52)—judicial records that should have been placed on the public docket remained under seal.[2]

---

[2] This Court's local rules provide that, when a motion to seal is denied, "unredacted documents filed under seal … remain sealed for purposes of preserving the record with regard to the court's ruling on the sealing motion." L.R. 5.3(b)(3)(C)(iii)(1). However, courts will not consider those unredacted filings unless and until the moving party re-files the unredacted docket on the public docket. L.R. 5.3(b)(3)(C)(iii)(2). Defendants never took this step. They instead

Page 11 of 16

First, the justifications for sealing the Prime-ESI Agreement and unredacted briefs, which cite just a few lines of the document, fail to meet the strict requirements laid out by the Sixth Circuit in *Shane Group* and by this Court in its Local Rules. 825 F.3d at 305–06; L.R. 5.3(b). The Sixth Circuit clearly states that competitively sensitive financial information is not automatically protected. *Shane Grp.*, 825 F.3d at 307. There must be a "clearly defined and serious injury." *Id*. (citation omitted). "'In delineating the injury to be prevented, specificity is essential.'" *Id*. at 307–08 (citation omitted); *see also* L.R. 5.3(b)(3)(A)(iv) (requiring "for each proposed sealed exhibit or document, *a detailed analysis*, with supporting evidence and legal citations, demonstrating that the request to seal satisfies controlling legal authority") (emphasis added). There is no specificity in the requests for sealing here. Instead, Defendants devote one paragraph to explain why a nearly 400-page document should be sealed from public view. That is grossly insufficient under *Shane Group* and does not overcome the strong presumption in favor of public access to the Prime-ESI Agreement.

Second, the parties' agreement to a protective order designating the Prime-ESI Agreement "highly confidential" is largely irrelevant and "not reason enough … to seal from public view materials that the parties have chosen to place in the

_____

filed a second unredacted motion to dismiss, again under seal, after the State filed its Amended Complaint. (Dkt. 58.)

court record." *Shane Grp.*, 825 F.3d at 307; *United States v. W.A. Foote Mem'l Hosp.*, No. 15-cv-12311, 2017 WL 4477968, at *1 (E.D. Mich. Jan. 4, 2017). Even if parts of the Prime-ESI Agreement require protection, Defendants' request is not narrowly tailored to those provisions. The Sixth Circuit is clear on this point too. As stated above, Defendants "must 'analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Shane Grp.*, 825 F.3d at 305–06 (quoting *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 548 (7th Cir. 2002)). Their motions to seal the Prime-ESI Agreement fall well short of this standard.

Third, Defendants' vague assertions of third-party interests do not identify any statutory or regulatory interests that might apply. *See id*. at 308 (finding arguments about third-party interests insufficient). They do not identify any trade secrets, privileged communications, or information protected by statute. *Shane Grp.*, 825 F.3d at 308 (quoting *Baxter Int'l*, 297 F.3d at 546). And they do not explain why any financial information or negotiations reflected in the Prime-ESI Agreement might otherwise overcome the public's right of access.

Compounding this problem is the enormous public interest in this case. Much like the class action in *Shane Group*, this is an antitrust case involving the rights of thousands of Michigan residents and the pharmacies that serve them. The Attorney General for the State of Michigan is bringing this suit on behalf of the People of the

State of Michigan, and the people have a keen interest in how the Attorney General asserts their rights in this Court. *See Woods v. United States Drug Enf't Admin.*, 895 F.3d 891, 893 (6th Cir. 2018) (public's interest is "particularly strong where the information pertains to an agency's interpretation of a regulation"); *Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) ("the public has a strong interest in monitoring not only functions of the courts but also the positions that its elected officials and government agencies take in litigation"); *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.").

## V.     CONCLUSION

NCPA's motion to intervene, for the limited purpose of seeking public access to the Sealed Pleadings and Exhibits discussed herein, is proper and meritorious. Permissive intervention is routinely granted to non-parties seeking access to judicial documents. NCPA's motion is timely and will not prejudice the parties to this action or delay litigation. The requirements of Rule 24 are easily satisfied.

With respect to the ultimate relief sought, the Sealed Pleadings and Exhibits are indisputably judicial records to which the public has a strong presumptive right

of access. Defendants voluntarily placed the Prime-ESI Agreement at issue and made it a judicial record when they attached the document to their motions to dismiss. The burden is on Defendants to demonstrate that making the Prime-ESI Agreement public poses a serious and particular risk of harm and that said risk outweighs the strong presumption in favor of public access. The broad assertions of harm they have made before this Court to date are inadequate. The complete sealing of the Prime-ESI Agreement is not even remotely tailored to specific privacy or confidentiality concerns, and the record offers no support for the specific redactions in the Sealed Pleadings. Absent a compelling and particularized demonstration of harm by Defendants, the Sealed Pleadings and Exhibits should be unsealed immediately.

For these reasons and those discussed above, NCPA respectfully requests that this Court grant its motion to intervene and unseal the Sealed Pleadings and Exhibits, so the public can access them in this important case brought on behalf of the People of the State of Michigan.

Dated: June 23, 2026                         Respectfully submitted,

                                             s/ Katherine Van Dyck
                                             Katherine Van Dyck
                                             **KVD STRATEGIES PLLC**
                                             1717 N Street NW, Suite 1
                                             Washington, DC 20036
                                             (202) 798-1948
                                             katie@kvdstrategies.com

Kathryn Regan Eisenstein (P66371)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Rd.
Troy, MI 48083
(248) 457-9200
keisenstein@manteselaw.com

*Attorneys for Proposed Intervenor National Community Pharmacists Association*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses disclosed on the Notice of Electronic Filing on June 23, 2026.

*s/ Katherine Van Dyck*
Katherine Van Dyck